UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY G. BUNKER,

          Plaintiff,

v.

RAG 5, LIMITED PARTNERSHIP,

          Defendant.

_____/

Case No. 2:22-cv-10416

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [33]**

Plaintiff Timothy Bunker sued Defendant RAG 5 Limited Partnership and alleged age discrimination in violation of the Age Discrimination in Employment Act (ADEA) and the Michigan Elliott-Larsen Civil Rights Act (ELCRA). ECF 1. Defendant moved for summary judgment. ECF 33. For the reasons below, the Court will grant the motion.

**BACKGROUND**

Plaintiff worked as a shop foreman and master technician at a BMW dealership in Rochester Hills, Michigan from January 1985 until September 2021. ECF 1, PgID 3.[1] As shop foreman, Plaintiff was responsible for assigning repair orders to other technicians, programming vehicles, reviewing technicians' work

---

[1] Since the start of his employment at the dealership, Plaintiff let his master technician certification lapse. *See* ECF 33-12, PgID 309.

1

quality, working with technicians to diagnose and repair vehicle issues, and more. ECF 33-2.

Defendant claimed, however, that "Plaintiff fell consistently short of fulfilling [his] duties." ECF 33, PgID 220. Plaintiff rarely helped diagnose vehicle issues and almost never worked on vehicle repairs himself. *See, e.g.,* ECF 36-2, PgID 971 (colleague Lucas Teeples stating that Plaintiff "did not work on diagnosing or repairing vehicles"). Indeed, Plaintiff admitted that he had not done regular technician work since 2005. ECF 33-12, PgID 318. Chris Paquette, another fellow technician, stated that Plaintiff would often "be watching shows on his computer all day when [technicians] would go up to him and ask for help." ECF 33-16, PgID 508. Teeples also "observed [Plaintiff] sitting around and doing nothing or looking at his phone." ECF 36-2, PgID 972. And Tiffany LaMay, Plaintiff's direct superior at the dealership, testified that Plaintiff "showed no initiative to actually work on a car besides programming." ECF 33-13, PgID 394; *see also* ECF 33-14, PgID 442 (Defendant's vice president testifying that LaMay "was having a hard time filling [technician] roles because nobody wanted to work at the dealership if [Plaintiff] was there as a shop foreman"). Plaintiff claimed that he spent between eight and ten hours a day programming. Teeples testified that programming is "not a challenging task" that employees with "no skills" can perform. ECF 36-2, PgID 973.

Defendant also claimed that Plaintiff struggled to effectively lead and retain employees. *See* ECF 33-13, PgID 394 (noting that Plaintiff "showed no initiative to help recruit, train, hire, [or] retain employees" and "more technicians left than

2

stayed"). Indeed, Paquette initially left the dealership because he "didn't want to work with [Plaintiff] anymore," *Id.* at 501, and because Plaintiff exhibited a "lack of effort," disconnection from the work in the shop, "negativity," resistance to helping others, spending "too much time on his phone," and more. *Id.* at 248. LaMay was unable to get "technicians with experience to come and work for [the dealership] with [Plaintiff] there." *Id.* at 397. And Teeples claimed that Plaintiff alienated his employees because he "played favorites" by giving "more work, or better paying work, to certain technicians and ignoring others." ECF 36, PgID 972, 978. Like Paquette, Teeples and McGinnis eventually left the dealership because they did not want to work with Plaintiff. *Id.*

Defendant purchased the Rochester Hills BMW dealership in April 2021. ECF 1, PgID 3. Defendant's vice president Zeyad Rafih met with Plaintiff and former service manager Jeff Pegg a few months later to discuss changes Defendant wanted to make to the dealership. *Id.* at 307. Specifically, Rafih wanted to increase the number of shop hours "turned" to 2,500 hours per month because the shop had never met the applicable "service effectiveness" expectations for number of cars serviced. *Id.*; *id.* at 440. Under Plaintiff's leadership, the dealership averaged only 1,815 hours per month. *See* ECF 33-5. Rafih authorized Plaintiff to hire more technicians to accomplish that goal. ECF 33-12, PgID 307.

Pegg resigned as service manager in July 2021 and was replaced by LaMay. *Id*. LaMay testified that Pegg's "biggest complaint was always his inability to retain

technicians because of [Plaintiff's] lack of leadership." *Id.* at 424. She then observed Plaintiff's performance and concluded:

> I didn't see an effort to increase throughput in the shop. I never saw [Plaintiff] take initiative to do mechanical work to a car. If there was a [customer] sitting there waiting and there wasn't a technician available, it sat and waited, or we were told that we couldn't get to the car that day . . . . [T]he majority of his time was spent doing things other than turning hours. He did spend a lot of time at his computer, and [] I didn't see the desire to make the technicians any more productive. And they didn't get that push from him either. They were allowed [] to be complacent and not take initiative[] to hustle and turn more hours.

*Id.* On one occasion, LaMay had to instruct Plaintiff to service a vehicle with leaking brake fluid that Plaintiff was otherwise going to turn away. *Id.*

Based on her observations of Plaintiff, LaMay began thinking about restructuring the foreman role from a "non-productive shop foreman" role to a "working shop foreman" role that required the foreman to "diagnose and actually make repairs to the cars and turn hours in the shop." *Id.* at 265, 425; *see also id.* at 394 (explaining that the impetus to restructure was based on "need[ing] to change the way that the shop was running in order to achieve [Defendant's] metrics"). LaMay also began talking to Paquette about potentially returning to the dealership to be the shop foreman. *Id.* at 398. She explained that Defendant pursued Paquette because he was more qualified for the role than Plaintiff since he had his experience working at two high-performing dealerships and he had completed more master technician certifications than Plaintiff. *See* ECF 33-6 (Paquette resume). LaMay discussed and received approval from David Wagner, the dealership's general manager, for the

restructuring, Plaintiff's termination, and Paquette's hiring before putting any of those changes into action. ECF 33-13, PgID 396.

LaMay and Wagner terminated Plaintiff's employment on September 1, 2021. *Id.* at 315 (LaMay informing Plaintiff that Defendant was restructuring and "going in a different direction") (quotation marks omitted). Specifically, Defendant was changing "the way that work was dispatched to technicians, how they got work when they needed it, and the role of the foreman to become what we call a working foreman, to be able to diagnose and actually make the repairs to the cars and turn hours in the shop." *Id.* at 425. By "going in a different direction," LaMay meant implementing and achieving performance goals that did not exist under previous ownership. *Id.*

Plaintiff claimed that LaMay asked him, before terminating his employment, "how old he was and when he planned to retire." ECF 1, PgID 3; *see also id.* (Plaintiff claiming that LaMay suggested he might want to spend more time with his grandchildren). LaMay admitted that she asked Plaintiff when he planned to retire but denied asking about his age or making any comments about his grandchildren. ECF 33-13, PgID 398–99. She explained that she asked about his "game plan was for retirement" because "at that point it was clear that . . . a decision was going to be made, and [she] was feeling bad about it, and [she] wanted to know his plans for the future." *Id.* at 398. Plaintiff and LaMay had known each other for nearly twenty years. *See id.* at 312, 390. LaMay testified that she was "upset" and felt badly and cried during the termination meeting. *Id.* at 401.

5

Plaintiff also claimed that Wagner asked him how many more years he wanted to work before retiring. ECF 1, PgID 3. Wagner testified that he does not remember ever asking Plaintiff about his age or retirement timeline. ECF 33-15, PgID 461.

LaMay hired Paquette as the new foreman. ECF 33-8. By December 2021, Paquette had hired four new technicians and begun turning over 2,000 shop hours per month. *See* ECF 33-5 (chart showing increase in number of hours turned once Paquette began working as foreman); ECF 33-13, PgID 394 (LaMay testifying that "in a very short time frame, . . . we had more technicians in the shop than that shop has ever had" and "productivity [went] up by almost 500 hours per month"). In May and June 2022, shop hours exceeded the goal of 2,500 hours turned per month. *Id.* at 253. And Paquette assigned the task of programming vehicles—a task Plaintiff spent eight to ten hours a day doing—to lower-level employees so that he could focus on repairing vehicles. *Id.* at 329. Teeples returned to the dealership and noticed a "vast improvement" with Paquette as foreman. ECF 36-2, PgID 973; *see also* ECF 36-4, PgID 983 (colleague Michael Hanson explaining that the dealership's "productivity increased quite a bit with Paquette" as foreman).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and listed Bavarian Motor Village—not Defendant—as the party he was suing. ECF 33-11, PgID 280–81. After the EEOC issued a right to sue letter, Plaintiff filed the present complaint. ECF 1.

# LEGAL STANDARD

## I.    Summary Judgment

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When it considers a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## II.    ADEA

The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment[]

because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff can establish a violation of the ADEA "by either direct or circumstantial evidence." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008) (citation omitted). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (quotation marks and quotation omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus[] but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

To establish discrimination, Plaintiff must prove by a preponderance of the evidence—either direct or circumstantial—that age was the "but-for" cause of Defendant's decision to fire Plaintiff. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000); *Hannon v. Louisiana-Pac. Corp.*, 784 F. App'x 444, 448 (6th Cir. 2019) ("The sole question that matters in employment discrimination cases is whether a reasonable juror could conclude that the plaintiff would have kept his job if he was not in the protected class, and everything else had remained the same.") (cleaned up).

If a plaintiff in an age discrimination case chooses to rely on circumstantial evidence, he must proceed through the burden-shifting approach laid out in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (noting that while "the Supreme Court expressly declined to decide whether the *McDonnell Douglas* test applies to the ADEA," the Sixth Circuit firmly held "that the *McDonnell Douglas* framework can still be used to analyze ADEA claims based on circumstantial evidence"). "To establish a prima facie case of age discrimination under [the *McDonnell Douglas* framework], the plaintiff must show that 1) he was a member of the protected class, 2) he was subject to an adverse employment action, 3) he was qualified for the position, and 4) he was replaced by someone outside the protected class." *Martin*, 548 F.3d at 410 (citation omitted) (alterations omitted). Plaintiff can satisfy the fourth prong by showing that he "was treated differently from similarly situated employees outside the protected class." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). If Plaintiff proves all four prongs, "the burden shifts to [] [D]efendant to articulate a legitimate, nondiscriminatory reason for its employment action." *Martin*, 548 F.3d at 410 (quotation marks and quotation omitted). And if Defendant satisfies that burden, Plaintiff "must produce sufficient evidence from which the jury may reasonably reject [] [Defendant's] explanation." *Id.* (quotation marks and quotation omitted). In other words, Plaintiff must show that Defendant's proffered reason for its employment action is a pretext for discrimination. *Green*, 411 U.S. at 802–03.

---

[2] By the same token, if a plaintiff presents direct evidence of age discrimination, he need not proceed through the *McDonnell Douglas* framework. *LaPointe v. United Autoworkers Loc. 600*, 103 F.3d 485, 488 n.3 (6th Cir. 1996).

## DISCUSSION

Plaintiff based his age discrimination claim on allegations that (1) Defendant's employees asked him how old he was and when he planned to retire and (2) Defendant hired a younger person to take Plaintiff's position. *See* ECF 1. Plaintiff thus relied on circumstantial evidence rather than direct evidence. *See Wexler*, 317 F.3d at 570 ("Circumstantial evidence . . . does not on its face establish discriminatory animus[] but does allow a factfinder to draw a reasonable inference that discrimination occurred.") And if a plaintiff elects to rely on circumstantial evidence, he must proceed through the *McDonnell Douglas* framework. *See Martin*, 548 F.3d at 410.

### 1. *McDonnell Douglas* Step 1

The first step in the *McDonnell Douglas* framework requires Plaintiff to establish a *prima facie* case of age discrimination. *Martin*, 548 F.3d at 410. "To establish a prima facie case of age discrimination . . . , [] [P]laintiff must show that 1) he was a member of the protected class, 2) he was subject to an adverse employment action, 3) he was qualified for the position, and 4) he was replaced by someone outside the protected class." *Id.* (citation omitted) (alterations omitted).

Here, Plaintiff established a *prima facie* case of age discrimination. He established that he was a member of a protected class because it is undisputed that he was sixty-one years old when he was fired. ECF 1, PgID 2. He established that he was subject to an adverse employment action—termination. *Id.* at 3. No evidence suggests that he was not qualified for the position when he was hired. And Plaintiff

established that Defendant replaced him with someone outside the protected class, thirty-three-year-old Chris Paquette. *Id.*; ECF 33-12, PgID 322; ECF 33-8, PgID 263; Plaintiff thus established a *prima facie* case of age discrimination.

### 2. *McDonnell Douglas* Step 2

Because Plaintiff established a *prima facie* case of age discrimination, the burden shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for its employment action." *Martin*, 548 F.3d at 410 (quotation marks and quotation omitted). Defendant did so. Defendant explained that its decision to fire Plaintiff was based on Plaintiff's repeatedly insufficient performance managing the shop, diagnosing vehicle issues, retaining employees, and more.

The evidence supports Defendant's explanation. First, Plaintiff exhibited insufficient performance managing the shop, diagnosing vehicle issues, and working with technicians. Plaintiff almost never diagnosed vehicle issues or worked on vehicles himself. And Plaintiff's former colleagues testified that Plaintiff was often "sitting around," "doing nothing," "looking at his phone," "spend[ing] a lot of time at his computer," or even "watching shows on his computer all day." *See, e.g.,* ECF 36-2, PgID 972; ECF 33-16, PgID 508; ECF 33-13, PgID 424. Plaintiff persisted in these behaviors even when technicians "would go up to him and ask for help." ECF 33-16, PgID 508. LaMay, Plaintiff's direct supervisor at the dealership, observed that Plaintiff "showed no initiative to actually work on a car besides programming," ECF 33-13, PgID 394, a task that other employees described as "not a challenging task" that can be assigned to employees with "no skills," ECF 36-2, PgID 973. LaMay also

11

described how Plaintiff would often keep customers waiting for a technician to become available rather than address their vehicles' issues himself. ECF 33-13, PgID 424 ("If there was a [customer] sitting there waiting and there wasn't a technician available, it sat and waited, or we were told that we couldn't get to the car that day."). On one occasion, LaMay had to instruct Plaintiff to service a vehicle with leaking brake fluid that Plaintiff was otherwise going to turn away because none of the other technicians were available at the time. *Id*. And Plaintiff's shortcomings were manifested in the productivity of the shop; under his leadership, the shop averaged only 1,815 hours per month, a figure well below the dealership's target. *See* ECF 33-5.

Second, Plaintiff repeatedly exhibited insufficient performance developing and retaining employees. *See, e.g.,* ECF 33-13, PgID 394 (LaMay testifying that Plaintiff "showed no initiative to help recruit, train, hire, [or] retain employees"). Indeed, during Plaintiff's tenure, "more technicians left than stayed." *Id*. For example, Teeples and McGinnis left the dealership because they did not want to work with Plaintiff. ECF 36-3, PgID 978 (McGinnis); ECF 36-2, PgID 972 (Teeples). Paquette did the same. *See* ECF 33-16, PgID 501. And Paquette was very specific about his reason for leaving—namely, Plaintiff's "lack of effort," disconnection from the work in the shop, "negativity," and resistance to helping others. ECF 33-3, PgID 248. Teeples also noted that Plaintiff alienated his employees because he "played favorites" by giving "more work, or better paying work, to certain technicians and ignoring others." ECF 36-2, PgID 972.

Plaintiff's poor reputation as a manager and team member was significant enough to affect the dealership's reputation. LaMay explained that she was unable to get "technicians with experience to come and work for [the dealership] with [Plaintiff] there." ECF 33-13, PgID 397; *see also* ECF 33-14, PgID 442 (Defendant's vice president testifying that LaMay "was having a hard time filling [technician] roles because nobody wanted to work at the dealership if [Plaintiff] was there as a shop foreman"). And that struggle was not confined to LaMay's tenure with the dealership. Her predecessor Jeff Pegg's "biggest complaint was always his inability to retain technicians because of [Plaintiff's] lack of leadership." ECF 33-13, PgID 424.

Plaintiff's insufficient performance led LaMay to restructure the shop foreman role to require the foreman to "diagnose and actually make repairs to the cars and turn hours in the shop." ECF 33-9, PgID 265. And LaMay explained this to Plaintiff when she terminated his employment. ECF 33-12, PgID 315. First, she explained that Defendant was terminating Plaintiff's employment because Defendant was "restructuring" the shop foreman role, which meant that Defendant was changing "the way that work was dispatched to technicians, how they got work when they needed it, and the role of the foreman to become what we call a working foreman, to be able to diagnose and actually make the repairs to the cars and turn hours in the shop." ECF 33-13, PgID 425. Second, she explained that Defendant was terminating Plaintiff's employment because Defendant was "going in a different direction," which meant that Defendant was implementing and achieving performance goals that did not exist under previous ownership. *Id.* The directional change was evidenced by

13

Rafih's conversation with Plaintiff, in which Rafih expressed a desire to increase the number of hours turned in the shop to 2,500. ECF 33-12, PgID 307; ECF 33-14, PgID 440. Thus, LaMay clearly articulated to Plaintiff at the time of his firing that Defendant was terminating his employment for non-discriminatory reasons.

Taken together, the evidence shows that Defendant terminated Plaintiff's employment for non-discriminatory performance reasons. The Court finds that Defendant carried its burden under the *McDonnell Douglas* framework of articulating a "legitimate, nondiscriminatory reason for its employment action." *Martin*, 548 F.3d at 410 (quotation marks and quotation omitted). And next, the burden shifts back to Plaintiff.

### 3. *McDonnell Douglas* Step 3

Because Defendant carried its burden, Plaintiff "must produce sufficient evidence from which the jury may reasonably reject Defendant's explanation." *Id.* (quotation marks and quotation omitted) (alterations omitted). Plaintiff must demonstrate that the reason for his termination were not "honestly held." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807–09 (6th Cir. 1998). In other words, Plaintiff must show that Defendant's proffered reason for its employment action—insufficient performance—was a pretext for age discrimination. *McDonnell Douglas*, 411 U.S. at 802–03.

Plaintiff cannot do so. As explained above, Defendant terminated Plaintiff's employment because of Plaintiff's repeatedly insufficient performance managing the shop, diagnosing vehicle issues, training and retaining employees, and more. Because

14

of Plaintiff's insufficient performance, Defendant had a "reasonable basis to be dissatisfied" with the quality of Plaintiff's work. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001).

What is more, none of the evidence suggests that Defendant's performance-related reasoning for firing Plaintiff was a pretext for age discrimination. Indeed, Plaintiff admitted that he had "no facts" to suggest that Defendant or any of its employees decided to terminate Plaintiff and hire Paquette on the basis of age. ECF 35-3, PgID 609.

Plaintiff alleged, however, that LaMay and Wagner made remarks to him about his age and retirement timeline that constitute evidence of age discrimination. Specifically, Plaintiff claimed that LaMay asked him, before terminating his employment, "how old he was and when he planned to retire" and suggested he might want to spend more time with his grandchildren. ECF 1, PgID 3. Plaintiff also claimed that Wagner asked him when he was going to retire. *Id.*[3] Both Wagner and LaMay deny the statements. But even assuming they inquired about Plaintiff's retirement plans, a reasonable jury could not find based on these questions alone and in light of the overwhelming evidence of poor performance, that Defendant's proffered reason for the termination is pretextual. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find . . . by a

---

[3] Plaintiff admitted that, outside of LaMay and Wagner's alleged statements, he "had no proof" and it was "[j]ust [his] belief" that his termination had anything to do with his age. ECF 35-3, PgID 611.

preponderance of the evidence that the plaintiff is entitled to a verdict."); *see also* *McDonnell Douglas*, 411 U.S. at 802–03. Indeed, the statements cast no doubt on the "legitimate, nondiscriminatory" reasons for Defendant's termination of Plaintiff's employment, *Martin*, 548 F.3d at 410, nor do they suggest that Defendant's performance-related reasons for firing Plaintiff were a pretext for age discrimination, *McDonnell Douglas*, 411 U.S. at 802–03.

In short, the record is devoid of evidence that Defendant's reasons for terminating Plaintiff's employment are a pretext for discrimination. Plaintiff therefore cannot carry his burden under the third prong of the *McDonnell Douglas* framework. Summary judgment is warranted for Defendant as to the ADEA claim. And ECLRA claims are evaluated under the same framework as Title VII and ADEA claims. *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 908 (6th Cir. 2009). Defendant is therefore also entitled to summary judgment on Plaintiff's ECLRA claims.

## ORDER

The Court finds that there is no genuine issue of material fact that would allow a reasonable jury to find that Defendant terminated Plaintiff's employment because of his age. Simply put, Defendant would have fired Plaintiff regardless of his age. The Court will therefore grant Defendant's motion for summary judgment and close the case.

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment [33] is **GRANTED**.

16

This is a final order that closes the case.

**SO ORDERED.**

<u>s/ Stephen J. Murphy, III</u>
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 6, 2024